IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) No. 2:04-cr-299 |
| | ) Judge Thomas M. Hardiman |
| | ) |
| DOUGLAS CAPLAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Following a trial in this Court, on October 20, 2006, a jury found Defendant Douglas Caplan guilty of one count of conspiracy to launder monetary instruments in violation of 18 U.S.C. §1956(h), and not guilty of four counts of engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. §§1957(a) and 2. On October 23, 2006, Caplan filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), claiming that the evidence presented at trial was insufficient to support the jury verdict.

The charges against the several Defendants in this case resulted from a lengthy investigation of large-scale heroin trafficking. The Government's investigation revealed that for several years, a group of individuals obtained substantial quantities of bulk, unpackaged heroin from New Jersey, brought it to Pittsburgh, and processed it into glassine stamp bags for distribution. The investigation also revealed that Defendant Vernon Jackson and others invested in and helped operate two nightclubs, Chauncy's and Rock Jungle, which served as "fronts" through which they attempted to launder their drug proceeds. The investigation utilized, *inter alia*, court-authorized wiretaps on five different cellular telephones (from August 6, 2004

through October 28, 2004) resulting in over 5,000 recorded calls, eleven of which were between Caplan and Jackson, though in none of those calls was "narcotics" mentioned explicitly. Unlike his co-Defendants, Caplan was not charged with drug trafficking, so the case against him proceeded to trial only on the money laundering charges.

The standard of review with respect to a motion for judgment of acquittal for insufficiency of the evidence is as follows:

> We must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision. As we have made clear, a court must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.

*United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (internal citations and quotation marks omitted).

In support of his motion, Caplan makes three arguments: (1) witness Vince Reda's testimony that Caplan knew the illegal nature of the scheme and source of the laundered funds is incredible because the jury found Caplan not guilty of making the initial deposits and withdrawals of said funds; (2) the shooting of a Chauncy's patron and arrest of a Chauncy's employee are "clearly insufficient" to establish Caplan's knowledge that other co-conspirators were laundering money through Chauncy's bank account; and (3) Caplan's own statements that he was "suspicious" that Vernon Jackson was involved in criminal activity do not indicate when his suspicions arose and do not rise to the level of actual knowledge. These arguments are addressed in turn.

First, the jury's verdict of not guilty with respect to the four counts of engaging in monetary transactions in criminally derived property does not necessarily mean that the jury disbelieved Vince Reda's testimony that Caplan knew before or during the conspiracy that Chauncy's served as a "front" for illegal drug money. Reda testified that he had the following conversation with Caplan regarding their belief that money used to purchase Chauncy's was drug proceeds:

> Q   Did you and Doug Caplan discuss the fact that Doc had been killed in a shoot-out?
> A   Yes.
> Q   Did you discuss any concerns you had about that?
> A   Yes. Following week, I says, it got to be drugs, now.
> Q   What did Doug Caplan say?
> A   He agreed with me.
> Q   At this point, you're getting ready to do a deal. One of the main people has been shot and killed?
> A   Yes.
> Q   Did you still decide to go forward?
> A   Yes.
> Q   Did Doug Caplan decide to go forward?
> A   Yes.

Trial Tr. of Oct. 16, 2006. The jury was free to attach whatever weight it wished to the foregoing testimony, and the Court would be speculating if it were to conclude that because the jury found that the Government failed to prove beyond a reasonable doubt that Caplan himself knowingly made the individual deposits and withdrawals in early June 2003, it necessarily follows that the jury disbelieved Reda's testimony about his conversations with Caplan regarding the financing and subsequent operation of the nightclubs.[1]

---

[1] In any event, inconsistency of the verdict is not a basis for granting a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. *See, e.g., United States v. Powell*, 469 U.S. 57, 65 (1984) ("verdicts that acquit on a predicate offense while convicting on the compound offense – should not necessarily be interpreted as a windfall to the Government at the defendant's expense.").

3

Second, the shooting and arrest that occurred at Chauncy's are certainly not the *only* evidence the Government adduced at trial to show Caplan's knowledge of the illegal money laundering scheme. The Government introduced, *inter alia*, evidence of Caplan's involvement in establishing the bank account at issue – a recorded telephone call on which Caplan stated, "[m]y name has been used now for two years" – his knowledge of the drug-related shooting death of Darcell "Doc" Boyd one week prior to the closing of the Chauncy's deal, as well as Caplan's own post-arrest statements that he was "suspicious" of Vernon Jackson, that his wife warned him not to get involved, and that he believed that Jackson may be involved in criminal activities. As was true of the defendant in *Flores*, the fact that Caplan "never requested any proof of the legitimacy of the transactions . . . [and] did not ask the natural follow-up question[s] to determine the source of those funds could reasonably be considered by a jury to be evidence of willful blindness." 454 F.3d at 156 (internal citation and quotation marks omitted).

Third, Caplan does not explain why the fact that his statement does not indicate *when* he became suspicious of Vernon Jackson serves as evidence against a finding of guilty. Perhaps Caplan is implying that when he made that statement, he was referring to suspicions he formed only after the conspiracy had ended. But no evidence to that effect was introduced at trial, and the jury was free to conclude that Caplan's statement referred to suspicions formed either before or during the conspiracy. Finally, the Court agrees with Caplan that "mere suspicions do not rise to the level of knowledge," but the jury was instructed to consider the evidence as a whole and so was free to conclude that, when combined with the other evidence the Government introduced at trial, Caplan's own statement indicating suspicions against the central figure in a major drug

4

trafficking conspiracy serves as part of the proof beyond a reasonable doubt that Caplan either knew of, or was willfully blind to, the illicit nature of his business dealings with Chauncy's. *See id.* at 155 ("Thus, the only question is whether the Government produced evidence that Flores *knew* of or was willfully blind to the fact that the funds originated in *some form of unlawful activity*, sufficient to obtain a conviction under §1956(h)." (emphasis in original)).

For the foregoing reasons, Defendant Caplan's Rule 29(c) motion for judgment of acquittal will be denied.

An appropriate Order follows.

January 16, 2007                                BY THE COURT:

 

                                                                                          Thomas M. Hardiman
                                                                                         United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) No. 2:04-cr-299 |
| | ) Judge Thomas M. Hardiman |
| | ) |
| DOUGLAS CAPLAN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

AND NOW, this 16th day of January, 2007, upon due consideration of Defendant's Motion for Judgment of Acquittal (Doc. No. 317) and the Government's response thereto (Doc. No. 321), it is hereby

ORDERED that said motion is DENIED. Sentencing of Defendant will proceed as previously noticed (document following Doc. No. 314) on January 26, 2007 at 9:00 AM in Courtroom 5B.

BY THE COURT:

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge